Filed 10/14/20  P. v. Lorenzo CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JAIME LORENZO, <br><br> Defendant and Appellant. | B298311 <br><br> (Los Angeles County <br> Super. Ct. No. VA102845) |

APPEAL from an order of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Reversed and remanded with directions.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

# I.    INTRODUCTION

Defendant and appellant Jaime Lorenzo appeals from the trial court's denial of his Penal Code section 1170.95[1] petition for resentencing.  We reverse and remand to the trial court for further proceedings as set forth below.

# II.    FACTUAL AND PROCEDURAL BACKGROUND

We take our factual and procedural background from our second and most recent nonpublished opinion in this case, *People v. Lorenzo* (Feb. 19, 2019, B285142):

"The following facts are from our prior nonpublished opinion in *People v. Carino* (Mar. 24, 2011, B220035), 2011 Cal.App. Unpub. LEXIS 2246.  In 2009, defendant was 'convicted, following a jury trial, of the second degree murder of Albert Rojas in violation of Penal Code section 187, subdivision (a) (count 1) and the first degree murder of Federico Perez also in violation of section 187, subdivision (a) (count 2). . . .  The jury found true as to both [defendant and co-defendant David Carino] the allegation that a principal was armed with a firearm in the commission of the murders within the meaning of section 12022, subdivision (a)(1).'  (*Ibid.*)  'The jury found not true the allegation that [defendant] personally used a firearm within the meaning of section 12022.53, subdivision (b).'  (*Ibid.*)

"'"The same jury convicted [co-defendant Cesar Cardenas] of vehicular manslaughter with gross negligence in the death of Rojas, in violation of section 192, subdivision (c)(1).'  (*Ibid.*)

---

[1]    All further statutory references are to the Penal Code.

"The evidence at trial demonstrated that on an evening in October 2007, the two murder victims and their friends walked out of a bar.  (*People v. Carino, supra*, B220035.)  One of the friends, Erik Calderon, 'relieved himself between two parked cars in the parking lot. . . .  Someone said, "Did you call us [expletive]?"  Erik saw that a truck was parked in the middle of the parking lot with the doors open.  Four people were standing in front of [one of Erik's co-workers].  The men were Juan Garcia, [defendant, and Carino].  Carino and one other man were holding guns.  (*Ibid.*)

"'The two men with guns pointed them at Erik.  Erik repeated that they were leaving.

"'[Victim] Rojas walked up to the group, and the men pointed their guns at him.  Garcia asked Rojas who he was.  Rojas raised his hands to his shoulders and raised his sweatshirt slightly.  Rojas started walking backwards away from the men.  Garcia swung at Rojas, grazing his chin.  Garcia then told the other men to hold Rojas.  The three men rushed toward Rojas, who continued to walk backwards and attempt[ed] to protect his face.  Garcia continued swinging.

"'When Rojas reached the sidewalk on Gage [Street], [victim] Perez ran up and began swinging.  Garcia and two of the men turned their attention to Perez and tried to hit him.  One man stayed with Rojas.  Carino held a revolver and looked at Perez.  Rojas tried to get away and took a gun dropped by [defendant].  Rojas moved toward Perez.  Carino fired at Perez, but the gun did not go off.  He fired again and hit Perez.  He then fired three shots at Rojas, who was about five feet away.  The shooting was described in the reverse order [by a worker from the bar].

"'Rojas was in front of a Maxima sedan. He fell after being hit by the gunshot. Before he hit the ground, the Maxima, driven by Cardenas, hit him. The front end of the car lifted. Rojas, who weighed 250 pounds, became stuck between the front wheels of the car. . . . [Cardenas made repeated attempts to move the car and eventually drove down the street], dragging Rojas under the car. Both [Rojas and Perez] later died [from their injuries].' (*People v. Carino, supra*, B220035.)

"'[Defendant] was interviewed by the police and told them that Carino shot Perez and Rojas. He said that Carino gave him a semi-automatic handgun before they got out of the truck. Carino had a revolver. During [defendant's] fight with a man, the gun fell out of [defendant's] pocket. [Defendant] heard gunshots, picked up his fallen gun, got into the truck and gave the gun back to Carino. They drove away.' (*People v. Carino, supra*, B220035.)

"'The trial court sentenced [defendant] to 25 years to life in state prison for the first degree murder conviction, plus a concurrent 15 year[s] to life term for the second degree murder conviction.' (*People v. Carino, supra*, B220035.) This court affirmed the conviction and judgment as to defendant. (*Ibid.*)

"On January 28, 2015, defendant filed a petition for a writ of habeas corpus in the trial court, contending that he could not be convicted of first degree murder as an aider and abettor with a natural and probable consequences theory under *People v. Chiu* (2014) 59 Cal.4th 155 . . . . The District Attorney filed a concession brief, agreeing that the petition should be granted. The District Attorney elected not to retry defendant on first degree murder and instead agreed defendant's conviction on

4

count 2 should be reduced from first degree to second degree murder, and that defendant should be resentenced accordingly.

"On March 17, 2017, the same trial judge who had presided over the trial and sentenced defendant, granted defendant's petition and reduced defendant's first degree murder conviction to second degree murder. In rejecting defendant's argument that he should be sentenced to involuntary manslaughter,[fn. omitted] . . . the trial court stated, 'Well, I have to say, counsel, that I heard the case, and I think this young man was up to—I think the evidence is ample and almost overwhelming that he was up to his ears in this whole transaction. [¶] He wasn't a bystander swept up by the events that—and there he is with his buddy and his gun falls out of his pocket and people die.'" (*People v. Lorenzo, supra*, B285142.)

On July 19, 2017, the trial court conducted defendant's resentencing hearing. It again rejected defendant's request that he be sentenced to involuntary manslaughter and probation and, instead, sentenced him to "'15 years to life. [¶] All other conditions as stated before apply.'" (*People v. Lorenzo, supra*, B285142.)

On February 25, 2019, defendant filed a petition for resentencing pursuant to section 1170.95.[2] The matter was assigned to the same trial judge who had presided over defendant's trial and sentencing hearings. On March 21, 2019,

---

[2] The petition consisted of a declaration from defendant's trial counsel declaring defendant's eligibility for section 1170.95 resentencing. In his declaration, defense counsel stated that defendant requested the trial court to appoint counsel for him. Although no appointment order appears in the record, the trial court served trial counsel with all minute orders and trial counsel filed the notice of appeal.

the prosecution filed a request for an extension of time to file an informal response to the petition. The trial court granted the request and continued the hearing to May 30, 2019.

On April 22, 2019, in chambers, off the record, and without counsel for either party or defendant present, the trial court denied defendant's petition. It ruled, "This is not a natural and probable [consequences] case. The law of the case was established by the Court of Appeal in People v[.] Carino et [al.] B220035 filed 3/24/11, wherein the court found petitioner was equally guilty. It was an aider and abettor theory."

## III.   DISCUSSION

Defendant contends the trial court erred in denying his section 1170.95 petition based on its finding that his murder convictions were not based on a natural and probable consequences theory. The Attorney General concedes the trial court's error.

"Senate Bill No. 1437 . . . amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder. Senate Bill 1437 also permits, through new . . . section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. Section 1170.95, subdivision (b), prescribes the information that must be included in the petition. Section 1170.95, subdivision (c), requires the sentencing court to review the petition; determine if it makes a prima facie showing

6

the petitioner falls within the provisions of section 1170.95; and, '[i]f the petitioner has requested counsel, . . . appoint counsel to represent the petitioner.' After counsel has been appointed, the prosecutor is to file and serve a response to the petition; and the petitioner may file a reply. If the petitioner has made a prima facie showing he or she is entitled to relief, the court must issue an order to show cause (§ 1170.95, subd. (c)) and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts (§ 1170.95, subd. (d)(1))." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, fn. omitted, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

The trial court summarily dismissed defendant's petition, apparently ruling that defendant failed to establish a prima facie case based on its finding that this is not a natural and probable consequences case. The court, however, previously granted defendant's petition for writ of habeas corpus in which he contended he could not be convicted of first degree murder as an aider and abettor under a natural and probable consequences theory under *People v. Chiu, supra*, 59 Cal.4th 155. As noted, the Attorney General concedes the trial court's error.[3]

---

[3] At oral argument, defendant withdrew an argument, raised in his briefs, that the trial court was required, on remand, to proceed directly to resentencing and forego the remainder of section 1170.95's steps. Defendant also requested an immediate issuance of the remittitur. The Attorney General stipulated to an immediate issuance of a remittitur, in this matter, if this court's disposition remanded the proceedings for the appointment of counsel and further proceedings in accordance with the terms of section 1170.95.

# IV. DISPOSITION

The order is reversed.  The matter is remanded to the trial court to appoint counsel and conduct further proceedings in accordance with the terms of section 1170.95.  The remittitur shall issue forthwith pursuant to California Rules of Court, rule 8.272(c)(1).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.